MARIO CHIUCCARIELLO & others, trustees,[1] *vs.* BUILDING
COMMISSIONER OF BOSTON & others.[2]

No. 89-P-674.

Suffolk. September 11, 1990. - November 9, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Zoning,* Variance; Person aggrieved; Board of appeals: notice of hearing,
jurisdiction. *Practice, Civil,* Zoning appeal. *Notice,* Administrative
hearing. *Mandamus. Laches.*

The failure of the board of appeal of the city of Boston to send to abutters
written notice of a public hearing on a variance application, as required
by the zoning enabling act for Boston, did not, in the circumstances,
deprive the board of jurisdiction to act on the application. [486]

An action for relief in the nature of mandamus was available to abutters
of a parcel of land under development who did not receive statutory
notice of various permits being granted by a city's board of appeal and
who did not have the benefit of a trial judge's determination that the
appeals period had begun to run at the time the abutters received ac-
tual knowledge of the developer's demolition and construction activities.
[487]

Abutters, as aggrieved parties, who lacked statutory notice of a public
hearing on a zoning variance application but had knowledge of demoli-
tion and construction activities by the developers of the abutting parcel
of land were barred by laches from receiving judicial review of the
granting of the application by a city's board of appeal, where the abut-
ters had failed to pursue any action for six months after they acquired
actual knowledge of the developers' activities, and the developers had
expended money for demolition and construction during that time.
[487-489]

[1]Luigi DePalma, and Elvio Tropeano, who, together with Chiuccariello
are trustees of the 328 Commercial Street Realty Trust.

[2]The board of appeal of the city of Boston. Alan S. Goldberg, Arnold I.
Friedman, and Alfred White, managers of the Mariner Condominium
Association, were substituted on appeal for the trustees of the developer
Beacon Wharf Development Trust, which no longer owns the property.

CIVIL ACTION commenced in the Superior Court Department on January 28, 1985.

The case was heard by *Elbert Tuttle*, J., on a statement of agreed facts.

*Floyd H. Anderson, Jr.*, for the plaintiffs.

*Henry C. Luthin*, Assistant Corporation Counsel, for the Building Commissioner of Boston & another.

*James L. LaMothe, Jr.*, for Alan S. Goldberg & others.

IRELAND, J. This is a land use case in which abutters challenge a variance on the ground that they did not receive written notice of the hearing on the variance application as required by the zoning enabling act for Boston.[3] A judge of the Superior Court ruled that the plaintiff-abutters failed to appeal the variance in a timely manner and that they were not entitled to relief in the nature of mandamus.[4] We conclude: 1) that relief in the nature of mandamus was available; 2) that although there was no evidence of written notice to the abutters there was nonetheless actual knowledge; 3) that the abutters failed to act within a reasonable period of time once they had actual knowledge of the variance; and 4) that ordinary principles of laches govern. We, therefore, affirm the lower court's decision.

The parties have stipulated the dispositive facts. The abutters are trustees of the 328 Commercial Street Realty Trust and own property immediately abutting 300-322 Commercial

---

[3]St. 1956, c. 665, § 8, second par., sets forth the notice requirement. It reads, in pertinent part,

> "Said board of appeal shall fix a reasonable time for the hearing of any appeal and give public notice thereof in a newspaper of general circulation in the city, and also send notice by mail, postage prepaid, to the appellant and to the owners of all property deemed by said board of appeal to be affected thereby, as they appear on the then most recent local tax list and to any person filing written request for notice of hearings, such request to be renewed yearly in December, and to the city planning board."

[4]Although the writ of mandamus has now been formally abolished (Mass.R.Civ.P. 81(b), 365 Mass. 841 [1974]), "[a] civil action to obtain relief formerly available by writ of mandamus may be brought in the supreme judicial or superior court." G. L. c. 249, § 5, as appearing in St. 1973, c. 1114, § 291.

Street, Boston. On November 3, 1983, the developers, trustees of Beacon Wharf Development Trust, applied to the building department of the city of Boston for permission to combine the lots at 300-322 Commercial Street and to rehabilitate a warehouse use thereon to ninety-eight residential apartments, several commercial units, and seventy-two parking spaces. That application was promptly denied for failure to comply with use of the parapet setback provisions of the Boston zoning ordinance. The developers sought relief through a conditional use permit and variances from the board of appeal (board), which scheduled a hearing on December 20, 1983. Notice of the hearing was published in the Boston Herald newspaper on December 6, 1983. The hearing was continued until January 10, 1984, and notice of the new hearing date was published in the Boston Herald on January 6, 1984. The board has no record of sending notice of the hearing, as originally scheduled or continued, to abutters, and the abutters did not receive any such notice. After the hearing, the board granted a conditional use permit allowing residential use of the property and granted two variances, allowing construction of 105 condominium units and 89 parking spaces.

On June 14, 1984, the abutters, by letter, requested the board to rehear the developers' petition, on the basis that the abutters had received no notice of the hearing. In another June 14, 1984, letter, the abutters informed the developers that they were seeking a rehearing and rescission of the developers' demolition permit, and that "any construction in accordance with the plan would be at their peril." On August 3, 1984, the abutters wrote to the board, noted that work was progressing on the property, and stated that if they did not hear from the board within a week, they would presume their request for rehearing was denied and would sue. On August 13, 1984, the developers obtained a building permit. No notice of the issuance of the permit was given to the abutters, nor would such notice ordinarily be required or given. The abutters protested to city officials, from time to time, through January 23, 1985, when they wrote to the board requesting

that it revoke the permit. The board advised the abutters that it would take no such action, and that a new hearing would be required.

On January 28, 1985, six months after the abutters notified the board of the notice problem, the abutters filed an action in Superior Court seeking declaratory relief under G. L. c. 231A and alleging that they were aggrieved parties with regard to the 300-322 Commercial Street property. Specifically, the abutters sought to have the actions of the board declared invalid for want of the required notice to them. The abutters also sought relief in the nature of mandamus, asking the court to order a new public hearing by the board, to revoke the building permit until after such a new hearing and the time for appeal therefrom, if any, had passed, or a final court judgment thereon. The abutters did not, and do not now, seek injunctive relief. Construction on the 300-322 Commercial Street property was completed on August 12, 1986, when the city building department issued certificates of occupancy. As of January 28, 1985, ninety-three condominium units in the property had been conveyed to persons not parties to the original action. As of this appeal, all units have been conveyed by the developers to third persons, bona fide purchasers for value, none of whom was a party to the original action or, apparently, had knowledge of it. Those purchasers are purportedly represented on appeal by the managers of the Mariner Condominium Association who were substituted for the developers.

The Superior Court judge ruled that the abutters' delay barred their action. He reasoned that the fifteen-day period for filing an appeal from a decision of the board, provided for in the Boston enabling act (St. 1956, c. 665 § 11, as amended by St. 1974 c. 669, § 1[5]) should be measured from

<hr>

[5]St. 1974, c. 669, § 1, amending St. 1956, c. 665, § 11, reads, in pertinent part,

   "Any person aggrieved by a decision of said board of appeal, whether or not previously a party to the proceedings . . . may appeal to the superior court sitting in equity for the county of Suffolk or, in the event that said decision is concerned with any building or place used, or intended or permitted for use, as a place of human habita-

the date of the abutters' actual knowledge. The abutters commenced their action more than six months thereafter.

The issue on appeal is whether the abutters, as aggrieved parties, who lacked statutory notice of a public hearing but had actual knowledge of the developers' demolition and construction activities, may be barred by laches from receiving declaratory relief and relief in the nature of mandamus.

The abutters argue that the variances granted by the board are invalid because the failure to provide them with notice of the public hearing deprived the board of jurisdiction. The abutters' status and right to notice as aggrieved parties is not contested. See *Bedford* v. *Trustees of Boston University*, 25 Mass. App. Ct. 372, 376 (1988) ("abutting landowner enjoys a presumption of being a 'person aggrieved' "); St. 1956, c. 665, § 8. The failure to provide notice as required by statute, however, did not deprive the board of jurisdiction. The defendants correctly point to *Kasper* v. *Board of Appeals of Watertown*, 3 Mass. App. Ct. 251, 256 (1975), in which we said that "not every decision of an administrative board need be invalidated for the board's failure to comply precisely with each of the notice provisions of a statute such as G. L. c. 40A, § 17 . . . . To rule that a board of appeals loses jurisdiction to act in every . . . instance [of defective notice] would be to rule that every successful petitioner before the board, who has no control over the manner in which the board performs its duties . . . would remain indefinitely subject to attack in proceedings in the nature of mandamus." (In *Kasper* we reached the same conclusion under the similar provisions of G. L. c. 40A, § 17, where the plaintiff had received actual notice but not statutory mail notice.) Successful attack on a board's decision, in the face of actual notice but in the absence of statutorily required notice, should be restricted to circumstances where prejudice is demonstrated. See *id.* at 257.

tion, to the housing court of the city of Boston, provided, that such appeal is filed in either of said courts within fifteen days after such decision is recorded."

In regard to prejudice, despite their lack of notice, the abutters were not barred from seeking relief from the board's decision. The abutters could have sought, and did seek, relief in the nature of mandamus. *Gamer* v. *Zoning Board of Appeals of Newton*, 346 Mass. 648, 649 (1964), held that for "persons aggrieved who were not parties to the proceedings before the [b]uilding [c]ommissioner to obtain a permit . . . their only means for relief is a petition for writ of mandamus to enforce [the zoning ordinance]."

Relief in the nature of mandamus is the proper remedy for aggrieved persons to pursue where, e.g., "applicable provisions in respect of time of appeal are unreasonable." *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 520 (1965). Because the abutters did not receive personal notice of the board's granting of the various permits, and did not have the benefit of the trial judge's determination that the appeals period had begun to run at the time of their actual knowledge, as opposed to the fifteen days from the granting of the permits, relief in the nature of mandamus would have been a proper means of enforcing a legal right. "The loss by an aggrieved citizen of the right of direct attack on a permit does not entail loss of the right of the same citizen to bring a mandamus petition for enforcement of the law and to stop violations in the construction going forward under the permit." *Id.* at 521. Relief in the nature of mandamus was available.

Failure, however, of the abutters to pursue any action for six months after actual knowledge of the developers' activities raised laches as a bar to judicial review of the board's action. Whether the abutters are chargeable with laches is a question of fact. *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 138 (1982), and cases cited therein. The trial judge could reasonably have found laches to bar the abutters' action based on the evidence. Before filing suit, the abutters waited six months after the developers obtained their permits and began construction. In the meantime, the developers spent monies in their demolition and construction activities while the abut-

ters protested and threatened legal action but did not take any.

Although G. L. c. 40A[6] does not govern the present matter,[7] we nonetheless find it a helpful guide in defining the time within which an appeal may be brought and the relief which may be sought.[8] General Laws c. 40A and St. 1956, c. 665, share common purposes and allow for the rendering of comparable decisions. The exercise of authority under each enactment is subject to strict requirements. *Damaskos v. Board of Appeal of Boston*, 359 Mass. 55, 60-62 (1971).

We take particular note of the language with which the second paragraph of G. L. c. 40A, § 17, closes, whereby defective notice allows an aggrieved person no more than ninety days after the board's decision has been filed in which to bring an appeal, but also allows one to pursue "all rights of appeal . . . in . . . equity." Specifically, we view this option to pursue equitable relief as supporting the rationale of *Kasper, supra*, that defective notice should not necessarily invalidate exercise of jurisdiction by the board. Although the option to pursue these rights through a collateral proceeding is not articulated in the Boston enabling act, we find the shared spirit of G. L. c. 40A and St. 1956, c. 665 (*Damaskos*,

---

[6]Section 17 of G. L. c. 40A (the Zoning Act), as appearing in St. 1975, c. 808, § 3, reads, in pertinent part (we add emphasis):

"Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . may appeal . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk . . . . The foregoing remedy shall be exclusive notwithstanding any defect of . . . notice other than notice by publication, mailing or posting . . . and the validity of any action shall not be questioned for matters relating to defects in procedure or of notice in any other proceedings except with respect to such publication, mailing or posting and then only *by a proceeding commenced within ninety days* after the decision has been filed in the office of the city or town clerk, but the parties shall have all rights of appeal and exception as in other equity cases."

[7]See *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 57 & n.2, 60-61 (1971) (G. L. c. 40A not applicable to Boston, where St. 1956, c. 665, controls).

[8]The Boston enabling act is silent on how a defect in notice affects the time within which an appeal from a decision of the board may be brought.

*supra*), sufficient to suggest that just as equitable considerations may support the validity of a variance granted in the face of defective notice, so, too, such considerations may militate in favor of the possibility of relief beyond the ninety-day standard. We view that standard in G. L. c. 40A, § 17, as an indication of the Legislature's desire for finality in the variance appeals process. We impute the same legislative concern and intention, that there be both a beginning and an end to this process, to the Boston enabling act. The abutters' failure to act for six months must be measured against the ninety-day standard the Legislature provides us. In this case, the plaintiffs unjustified delay went substantially beyond the standard, laches attached, and the action was time-barred.

*Judgment affirmed.*